UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL J. SMITH, III,

                    **Plaintiff,**

v.                                 Civil Action No. 16-cv-2242 (TFH)

HOLLAND LP, *et al.*,

                    **Defendants.**

## MEMORANDUM OPINION

Plaintiff Daniel Smith was injured while working in a tunnel of the Washington, D.C. metro on October 6, 2013. He seeks to hold defendant Plasser American Corporation ("Plasser") liable for the design and manufacture of the machine at the center of the accident—a mobile railway maintenance hub called a prime mover. Plasser has moved for summary judgment on Counts VIII-XI of the complaint—"strict liability of manufacturer," defective design, defective manufacture and failure to warn, respectively. Plasser contends that there is no genuine dispute of material facts, and that the contractor specification defense warrants the dismissal of all counts against it. [ECF No. 23]. The plaintiff both opposes Plasser's motion and has moved to strike it, [ECF No. 24], and Plasser has replied [ECF No. 27].

I.      **Background**

On the night of the accident, the plaintiff was working in a Washington Metropolitan Area Transit Authority ("WMATA") Red Line tunnel alongside employees from WMATA and Holland, LP, a subcontractor and additional defendant in this case. Opp'n ¶¶ 1, 3. Holland

1

employees were using a welder affixed to the prime mover to weld pieces of rail together. *Id.* ¶ 5. The welding process generated a by-product of heated metal that burned a hole in a hydraulic hose connected to the prime mover. *Id.* ¶ 7. The hose leaked hydraulic fluid, and the fuel ignited into a fireball. *Id.* Reacting to the fire, a WMATA employee drove a crane away from the danger. *Id.* ¶ 8. The crane was suspending a rail that struck and injured the plaintiff. *Id.*

This case is the third to arise from the same accident. *See Felder ex rel. Ingram v. WMATA*, No. 14-cv-1905 ("*Felder*"); *Rardon v. Holland, LP,* No. 16-cv-539 ("*Rardon*"). In the *Rardon* case, the Court granted Plasser's motion for summary judgment based on the contractor specification defense. *Rardon v. Holland*, 279 F. Supp. 3d 93 (D.D.C. 2017). The Court found that Plasser manufactured the prime mover according to WMATA's specifications, and that there was no evidence that the prime mover had an obvious defect. *Id.* at 99.

## II. Legal Standard

### a. Federal Rule of Civil Procedure 56

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact*." Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (internal quotations omitted). In response, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324.

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Although "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party," *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011), "[i]f the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted," *Anderson*, 477 U.S. at 249-50.

### b. Local Civil Rule 7(h)

The local rules of this court require that "[e]ach motion for summary judgment . . . be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h). Any opposition must be "accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." *Id.* When deciding a motion for summary judgment, "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *Id*.

## III. Facts

### a. The Plaintiff Has Failed to Comply with Local Civil Rule 7(h)

The plaintiff did not submit a separate statement setting forth the material facts that he disputes, violating Local Civil Rule 7(h) and complicating the Court's ability to discern disputed, material facts. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 151 (D.C. Cir. 1996) (describing the rule as "plac[ing] the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record."). The Court is "under no obligation to sift through the record" and "is to deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule [7(h)] statement." *Jackson,* 101 F.3d at 154. However, in the body of his opposition, the plaintiff disputes whether Plasser complied with the contract specifications. Because the Court can discern the plaintiff's opposition on this issue, because the filings are not voluminous, and because the contract issue alone can dispose of the case, the Court will assess whether there is a genuine dispute of material facts over Plasser's compliance with the contract. *See Burke v. Gould*, 286 F.3d 513, 518 (D.C. Cir. 2002) ("this court has long recognized that the district court does not abuse its discretion by declining to invoke the requirements of the local rule in ruling on a motion for summary judgment.").

### b. The Court Will Deny the Plaintiff's Motion to Strike

Plasser relies on deposition testimony given in the *Rardon* and *Felder* cases to support its motion for summary judgment. The plaintiff "zealously dispute[d]" the paragraphs of the motion supported by that testimony on the basis that it came from different litigation, and asked the Court to strike Plasser's motion in its entirety. Opp'n at 5-6 (objecting to paragraphs 6, 10-12 and 14-16, which include, *inter alia*, testimony from WMATA's corporate designee Clay

4

Bunting, and plaintiff's expert Gregory Paulsen[1]). The plaintiff even sought to exclude the deposition testimony that Mr. Paulsen gave in the *Rardon* litigation, while simultaneously relying on his expert report from that case. Opp'n at 7; Mot. Ex. 8.

After hearing argument on the issue, the Court ruled in a hearing on July 17, 2018 that it may consider the deposition testimony from the *Rardon* and *Felder* cases while ruling on the motion for summary judgment. The depositions meet the requirements of Federal Rule of Civil Procedure 56(c). *See, e.g., Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014) ("depositions from one case may be used at the summary judgment stage of another" so long as they "satisfy Rule 56's requirements for an affidavit or declaration" and are part of the record); *Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001) ("[s]worn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding. . . . Such testimony is considered to be an affidavit pursuant to Federal Rule of Civil Procedure 56(c)"); Fed. R. Civ. P. 56(c)(4) (requiring that affidavits or declarations used to support motions for summary judgment be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Mr. Bunting was WMATA's contracting officer for the prime mover, and he testified about the features of the prime mover and the contract for the prime mover based on his personal knowledge. Mot. ¶¶ 6, 10-11; Reply at 2, Ex. 4. As for Mr. Paulsen, aside from being a mechanical engineer who inspected at least part of the prime mover, he is the plaintiff's own expert in this case. Mot. Ex. 8. The plaintiff's request to exclude his testimony while relying on his expert report is curiously incongruent. Moreover, the plaintiff's only objection to the testimony of Mr. Bunting and Mr. Paulsen—that it

---

[1] These paragraphs also include testimony from WMATA employees Lyle Rardon and Jamal Haggie. Because the Court does not rely on that testimony to rule on this motion, the Court does not address it.

is inadmissible because his lawyer was not present for the depositions—is unfounded. As the Court noted at the hearing, in order to contest the testimony, the plaintiff should have filed opposing affidavits or pointed to contradictory deposition testimony, not "complain that . . . [his counsel] was not present and permitted to cross-examine" the witnesses when the depositions occurred. *Tingey v. Radionics*, 193 F. App'x 747, 765 (10th Cir. 2006). For these reasons, the Court will deny the motion to strike.

### c. Material Facts as to Which There is No Genuine Dispute

WMATA contracted with Plasser to manufacture the prime mover. The contract included a "specifications package" for a "flashbutt welding prime mover." Mot. Ex. 3. WMATA wrote the specifications. Mot. ¶ 6, Ex. 1 (Bunting Dep.) 22:2-4; Mot. ¶ 7, Ex. 2 (Off Dep.) 63:8-64:2. Under a section entitled "hydraulic system requirements," the specifications list nine requirements of the "reservoir," including the requirement that the "hydraulic system . . . contain a failsafe safety circuit to shut off hydraulic tank flow in the event of catastrophic failure, i.e. hose rupture." Mot. ¶ 9, Ex. 4 § 3.26.4(i). The plaintiff conceded at oral argument that this is the only outstanding factual issue related to compliance with the contract.[2]

The plaintiff submitted the same expert report in this case that was submitted in the *Rardon* matter. Mot. ¶ 13, Ex. 8. The expert who wrote the report, Gregory Paulsen, did not review the whole contract between WMATA and Plasser, and did not know who wrote the specifications. Mot. ¶ 14, Ex. 9 (Paulsen Dep.) 122:5-10; 123:2-9.

---

[2] Specifically, counsel for the plaintiff conceded that he "thinks the contractor specification defense probably prevents Mr. Smith from contending that the hoses that were used on the prime mover were unreasonable. That's not really Mr. Smith's argument. This really focuses on the kill switch." Summ. J. Hr'g (Realtime Tr.) 14:21-15:1 (July 17, 2018).

**IV.     Plasser Seeks Summary Judgment Based on Its Compliance with WMATA's Contract Specifications**

Plasser asserts that the contractor specification defense warrants summary judgment in its favor because Plasser complied with the specifications of its contract with WMATA in manufacturing the prime mover. Mot. at 6. The plaintiff argues that Plasser did not comply with the contract specifications, and, alternatively, that the contractor specification defense is inapplicable because the specifications were so obviously dangerous that Plasser should not have followed them. Opp'n at 10-14.

   **a. Strict Liability and the Contractor Specification Defense**

The District of Columbia recognizes causes of action for strict liability in tort based on the Restatement (Second) of Torts § 402A. "Under § 402A, [a] plaintiff must prove by a preponderance of the evidence that: (1) the seller was engaged in the business of selling the product that caused the harm; (2) the product was sold in a defective condition unreasonably dangerous to the consumer or user; (3) the product was one which the seller expected to and did reach the plaintiff consumer or user without any substantial change from the condition in which it was sold; and (4) the defect was a direct and proximate cause of the plaintiff's injuries." *Warner Fruehauf Trailer Co., Inc. v. Boston*, 654 A.2d 1272, 1274 (D.C. 1995). A product may be found defective under this section if it has "(1) a manufacturing defect; (2) an absence of sufficient warnings or instructions; or (3) an unsafe design." *Id.*[3]

Under the contractor specification defense, "a manufacturer is not liable for an allegedly defective product where the product has been manufactured in accordance with plans and

---

[3] The plaintiff alleges four counts against Plasser: "strict liability of manufacturer," defective design, defective manufacture, and failure to warn. Compl. ¶¶ 62-65. Count VIII, "strict liability of manufacturer," is not a recognized cause of action separate and apart from defective manufacture. The Court will construe it as duplicative of Count X.

7

specifications of the purchaser except where the plans are so obviously dangerous that they should not reasonably be followed." *Rardon*, 279 F. Supp. 3d at 98 (internal quotations omitted).

b. **Plasser Complied with the Contract Specifications**

Plasser asserts that it complied with the contract specifications, and emphasizes that "the contracting parties have conceded there was no breach" of contract. Mot. at 8. Plasser points to the testimony of Andrew Off, WMATA's corporate representative in this matter, who testified that he was not aware of any information indicating that the failsafe did not meet the contract's requirements. Mot. ¶ 7, Ex. 2 (Off Dep.) 64:9-14. WMATA's corporate representative in the *Felder* case, Clay Bunting, also testified that the hydraulic system contained a failsafe circuit to shut off hydraulic tank flow in the event of a hose rupture. Mot. ¶ 11; Ex. 6 (Bunting Dep.) 78:20-79:6.

The plaintiff contends that there remains a triable issue of fact over whether Plasser met the contract's specifications. In particular, the plaintiff argues that the prime mover did not feature an "automatic" failsafe as required by the contract. Opp'n at 8. In support, the plaintiff primarily relies on his own description of expert Gregory Paulsen's opinion. The plaintiff points to his Rule 26 disclosure where he wrote that "Mr. Paulsen will opine that Plasser did not manufacture the hydraulic pumping system consistent with WMATA contract specification 3.26.4.i" because "[f]ailsafe means that the system will shut down automatically," and that "[a]n emergency stop button is not failsafe because it requires human intervention."[4] Opp'n at 8, Ex. E at 3 [ECF 24-5]. The plaintiff also cites portions of the report showing two examples of "automatic hydraulic fluid flow shutoff methods," and argues that it is "evident from the written

---

[4] The plaintiff claims that he filed his expert designation on November 30, 2017, but no such filing exists on the docket. Opp'n at 8.

report by Mr. Paulsen that the specifications ordered by WMATA would have lessened or prevented the fire in the instant matter." Opp'n at 9.

Mr. Paulsen did not reach these conclusions in his expert report. His report does not even address the contract specifications, let alone whether the prime mover met them.[5] The plaintiff did not take Mr. Paulsen's deposition in this litigation, and does not cite any other support for his assertions. His description of what his expert's testimony will be does not replace the record evidence needed to survive a motion for summary judgment. *See Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016) ("In making or opposing a summary judgment motion, a party may no longer rely on the hope of new testimony or additional documents other than what it put before the court. Each party's hand is dealt.").

The plaintiff points to testimony of Plasser's expert, Dr. Robert Scates, to demonstrate that the "failsafe circuit installed by Plasser on the prime mover was not automatic, per WMATA's specifications." Opp'n at 9. However, Dr. Scates testified explicitly that, despite not being automatic, the "red" shutoff button satisfied the failsafe contract specification. Reply at 4; Opp'n Ex. M (Scates Dep.) 25:2-17. The plaintiff also argues that Larry McCullough, Plasser's corporate representative, testified that the prime mover did not feature a "failsafe system that would trigger without human intervention." Opp'n at 7-8. In doing so, the plaintiff mischaracterizes Mr. McCullough's testimony. He testified that the hydraulic system contained a failsafe "in the top of the hydraulic reservoir," and that it was the "only automatic shutoff in [the] hydraulic system" on the prime mover. Opp'n Ex. D (McCullough Dep.) 81:3-82:4; *see also id*. 81:6-9 (explaining that the failsafe was "a sensor . . . [a]nd if the level [of the fluid in the

---

[5] In the *Rardon* litigation, Mr. Paulsen testified that he only reviewed one page of the contract specifications related to the failsafe, and that he did so after writing his report. Opp'n to Mot. for Summ. J., Ex. 8 (Paulsen Dep.) 125:11-126:12, *Rardon v. Holland, LP*, 279 F. Supp. 3d 93 (D.D.C. 2017) (No. 16-cv-539) [ECF No. 42-14].

9

reservoir] dropped a certain percentage, then it would shut the system down."). Although Mr. McCullough stated that Plasser "would not expect that failsafe to work in the event of a small leak that created a hydraulic fluid mess," that statement does not mean that Plasser failed to comply with WMATA's contract specifications. *Id*. 81:18-21.

The testimony of Messrs. McCullough and Scates does demonstrate conflicting views on whether the failsafe was automatic. *Compare* Scates Dep. 25:4-6 (describing the failsafe circuit as a "red button" that was "not automatic") *with* McCullough Dep. 81:22-82:8 (describing the failsafe as automatic, but also describing it as working similarly to "the kill switch on a lawn mower"). But "[t]he mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a material fact." *Indep. Settlement Servs., LLC v. Lewis*, 296 F. Supp. 3d 194, 196 (D.D.C. 2018) (quoting *Etokie v. Duncan*, 202 F. Supp. 3d 139, 145 (D.D.C. 2016)). In his deposition testimony in the *Rardon* case, Mr. Paulsen testified that the prime mover "did not have a fail-safe. It had manual shutoffs," and thus "did not meet the [contract] spec[ifications]." Mot. Ex. 14 (Paulsen Dep.) 167:4-9. However, the plaintiff did not cite this testimony, and it not incumbent on the Court to raise the issue on the plaintiff's behalf. *See Jackson*, 101 F.3d at 154 (finding it "irrelevant . . . whether the record could have supported a finding of a genuine issue of material fact" after the court struck the nonmovant's statement of material facts not in dispute).[6] The plaintiff points to no support for his assertion that the contract specification required an automatic failsafe, and thus has not demonstrated why this fact is

---

[6] Furthermore, as the Court found in *Rardon*, Mr. Paulsen "did not complete an investigation of every hydraulic system on the [p]rime [m]over, and . . . his opinion related to automatic shut off valves for the hydraulic hoses, not the entire hydraulic system." *Rardon*, 279 F. Supp. 3d at 97; Mot. Ex. 12 (Paulsen Dep.) 132:1-16. He also did not review the full contract between Plasser and WMATA, and only reviewed one page of the contract specifications related to the failsafe, giving him a limited perspective on the contract specifications. *See Rardon*, 279 F. Supp. 3d at 97 (finding that Mr. Paulsen's testimony could not create a factual issue to avoid summary judgment because it lacked sufficient factual support).

10

material. *See Anderson*, 477 U.S. at 248 (describing factual disputes as material when they "might affect the outcome of the suit under the governing law"). Finally, the testimony of Mssrs. Scates and McCullough does not demonstrate a dispute over whether the device met the contract specifications, and the plaintiff points to no evidence to the contrary. Therefore, the Court cannot find that the evidence presented by the plaintiff is such that "a reasonable jury could return a verdict" in his favor on this issue. *Anderson*, 477 U.S. at 248.

### c. The Plaintiff has Not Shown that the Prime Mover was "Obviously Dangerous"

The plaintiff also argues that the contractor specification defense fails because the specifications for the prime mover were so "obviously dangerous" that Plasser should not have followed them. Opp'n at 11. Plaintiff contends that, in contrast to the *Rardon* matter, which contained no evidence that the prime mover had an obvious defect, the record here demonstrates that it does. *Id.* at 12. Although the plaintiff asserted in his Rule 26 disclosure that Mr. Paulsen would testify that the prime mover was "obviously dangerous," the plaintiff does not cite any evidence in support of that assertion. Counsel's claims that an expert will testify to a given fact does not create a genuine dispute of material facts sufficient to survive a motion for summary judgment.

## V. Conclusion

For the forgoing reasons, the Court shall grant Plasser's motion for summary judgment, and deny plaintiff's motion to strike. An appropriate order accompanies this opinion.

March 15, 2019

                                                                    Thomas F. Hogan
                                                    SENIOR UNITED STATES DISTRICT JUDGE